IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE MEDICAL EQUIPMENT & : | | CIVIL ACTION |
| SUPPLY, INC. and DOMINIC : | | NO. 11-1107 |
| ROTELLA, : | | |
|     Plaintiffs, : | | |
| : | | |
|     v. : | | |
| : | | |
| UNITED STATES OF AMERICA, : | | |
|     Defendant. : | | |
|     : | | |

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                                          **March 28, 2012**

Nichole Medical Equipment & Supply, Inc. ("Nichole Medical"), a durable medical equipment ("DME") supplier, and its president and owner Dominic Rotella, have filed suit against the United States seeking a declaratory judgment and damages for the Government's alleged breach of a January 27, 2006 settlement agreement ("Settlement Agreement"), and also claiming fraudulent conduct related to the Settlement Agreement.

The Government has filed a motion to dismiss all claims on the grounds that: 1) the Court lacks subject matter jurisdiction over Plaintiffs' contract claims (Counts I and II) because, pursuant to the Tucker Act, contract claims (and claims sounding in contract such as Plaintiffs' declaratory judgment claim) seeking damages in excess of $10,000 must be heard by the Court of Federal Claims; and 2) the Court lacks subject matter jurisdiction over Plaintiffs' fraud claims, as they fall under an exception to the Federal Tort Claims Act ("FTCA") and Plaintiffs assert no other legitimate basis for jurisdiction. For the reasons set forth below, the Court finds that it lacks jurisdiction over Plaintiffs' claims.

**I.    BACKGROUND**

*The Incontinence Supplies Action*

In 2004, the United States filed a civil action against Nichole Medical in the Eastern District of Pennsylvania, alleging violations of the False Claims Act, fraud, unjust enrichment, and breach of contract, based upon Nichole Medical's billing for incontinence supplies.[1] In 2005, the parties entered into a Settlement Agreement, pursuant to which Plaintiffs agreed to pay the United States $750,000.[2] The Settlement Agreement provided that Nichole Medical would make one substantial payment followed by equal monthly payments for five years, and would undertake enumerated non-monetary obligations. In exchange, the Government agreed to release Nichole Medical and the individual defendants in that case, including Rotella, from civil or administrative monetary claims based on the covered conduct. This was understood by the parties to be a final resolution of the dispute over Nichole Medical's billing for incontinence supplies. The Complaint in the present case alleges that Nichole Medical made the substantial initial payment, but made only two of the sixty monthly payments due under the Settlement Agreement.

*The Motorized Wheelchair/ Semi-Electric Bed Investigation*

On May 20, 2002, TriCenturion, a Medicare Program Safeguard Contractor (PSC), which, pursuant to its contract with Medicare, performs program integrity tasks such as fraud and overpayment investigations on behalf of the United States Secretary of Health and Human

---

[1] United States v. Rotella, Civil Action No. 04-946, was before the Honorable Stewart Dalzell.

[2] Complaint, Ex. A.

Services, performed an unannounced audit of Nicole Medical's business records.[3]  It claims to have found evidence of overpayment to Nichole Medical for motorized wheelchairs and medical beds.  Although the United States Attorney did not find evidence of fraud, TriCenturion maintained that Plaintiff had improperly billed Medicare for some motorized wheelchairs and semi-electric hospital beds (i.e. an administrative overpayment), and issued a notice of overpayment to Nichole Medical in 2004.  TriCenturion estimated the amount of overpayment, and instructed the regional carrier, then HealthNow, to institute a 100% offset against other payments due to Plaintiff under Medicare.  HealthNow initially complied, but stopped the recoupment after counsel for Nichole Medical intervened.  When National Heritage Insurance Company ("NHIC") succeeded HealthNow, TriCenturion instructed NHIC to re-institute the offset, which NHIC did in July 2006.[4]  The offset allegedly caused Nichole Medical to default on the payments due under the terms of the incontinence supplies Settlement Agreement, and by January 2007 Nichole Medical terminated all business operations.

Plaintiff appealed the overpayment calculation and offset through the administrative review process.  In February 2007, the Administrative Law Judge ("ALJ") found that TriCenturion had not complied with certain Medicare regulations regarding notices, procedures, and grounds for re-opening claims and instituting offsets.  The ALJ found that $101,201.44 had been improperly offset and was owed to Nichole Medical.  In January 2008, the Medicare

---

[3] In related action Nichole Medical Equipment & Supply, Inc. v. TriCenturion, Civil Action No. 10-389, the United States Department of Justice represented TriCenturion, and asserted that, pursuant to TriCenturion's contract with the Department of Health and Human Services, TriCenturion's actions were those of a government entity.

[4] The Department of Justice also considers the actions taken by NHIC to be those of a government actor under the direction of the Secretary of Health and Human Services.

Appeals Council upheld the ALJ's opinion.[5]

Rather than issuing the improperly offset funds to Nichole Medical, the United States wished to apply the $101,201.44 to the balance owed under the Settlement Agreement, as Nichole Medical was, by that time, in default. Pursuant to this goal, the Government filed a motion to enforce the incontinence supplies Settlement Agreement. The District Court Judge denied this motion on procedural grounds.[6]

*The Claims Set Forth in the Complaint*

First, Plaintiffs seek declaratory judgment regarding the incontinence supplies Settlement Agreement. Plaintiffs allege that Defendants expressly or impliedly promised to conduct business with Nichole Medical within Medicare's legal and regulatory structure. Plaintiffs argue that the Government breached this provision of the Settlement Agreement and its duty of good faith and fair dealing by allowing its agents to conduct an unannounced investigation of Nichole Medical's billing for motorized wheelchairs and semi-electric beds, re-open closed claims regarding such DME, and impose an offset for allegedly improper motorized wheelchair/ semi-electric bed billing. Therefore, Plaintiffs herein seek judgment declaring that the Settlement Agreement was rendered void and/or unenforceable by the Government agents' later mishandling of concerns about Nichole Medical's billing for motorized wheelchairs and semi-electric beds, and seek a refund of all money paid to the Government pursuant to the Settlement Agreement, as

---

[5] The Medicaid Appeals Council also found that TriCenturion did not follow the proper procedures and time lines for reopening claims and recouping an administrative overpayment, absent proof of fraud, and therefore found in favor of Plaintiff.

[6] Despite the order denying the Government's motion, Plaintiffs have not been paid the $101,201.44 awarded in the motorized wheelchair/ semi-electric bed action. However, the lawsuit presently before the Court is not an action to enforce the rulings of the ALJ and the Medicare Appeals Council.

well as payment of the improper offset.

Second, Nichole Medical asserts a breach of contract claim for the same conduct described above. As previously discussed, the conduct Nichole Medical alleges breached the Settlement Agreement was the subject of administrative review. Despite its successful challenge to the Government agents' compliance with the Medicare laws and regulations, here Nichole Medical argues that the non-compliance with those statutes and regulations was <u>also</u> a breach of the Settlement Agreement, and Plaintiffs seek compensatory damages for the breach.

Third, Nichole Medical seeks relief and punitive damages for fraud, alleging that the Government agreed to conduct business with Nichole Medical within the applicable legal and statutory structure, that the representation that it would do so was false, and that Nichole Medical relied upon that representation to its detriment.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction. The plaintiff has the burden of establishing subject matter jurisdiction.[7] If a defendant disputes certain jurisdictional facts alleged by plaintiff, the court is not required to presume the truthfulness of plaintiff's allegations, but may examine facts outside the pleadings[8] and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[9]

---

[7] <u>Carpet Group Int'l v. Oriental Rug Imp. Ass'n</u>, 227 F.3d 62, 69 (3d Cir. 2000); <u>Mortensen v. First Fed. Sav. & Loan Ass'n.</u>, 549 F.2d 884, 891 (3d Cir. 1977).

[8] <u>Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.</u>, 673 F.2d 700, 711 (3d Cir. 1982).

[9] <u>Id.</u>

5

### III.    DISCUSSION

*Jurisdiction Over Count II (Breach of Contract) Under the Tucker Act*

The United States argues that the Tucker Act and the Little Tucker Act confer exclusive jurisdiction in the Court of Federal Claims for contract cases against the United States involving damages in excess of $10,000.[10]  It is undisputed that Plaintiffs are seeking more than $10,000 for their breach of contract claim (Count II).  However, Plaintiffs argue that some courts have allowed an exception to the Tucker Act, ruling that district courts have jurisdiction over actions against the Government for breach of settlement agreements when the agreements at issue arose from disputes properly litigated in those courts.[11]   Plaintiffs' claim alleges the breach of a Settlement Agreement reached in litigation properly before the Eastern District of Pennsylvania.[12]  Thus, the Court must address any conflict between the jurisdictional provisions of the Tucker Act and a court's inherent power to enforce a settlement agreement which resolved a dispute properly before it.[13]

The parties reached the Settlement Agreement at issue on January 27, 2006, and Judge Dalzell dismissed the case with prejudice on January 30, 2006.  On August 19, 2009, the

---

[10] 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

[11] <u>Amin v. Merit Sys. Protection Bd.</u>, 951 F.2d 1247 (Fed. Cir. 1991); <u>Reed by and through Reed v. United States</u>, 891 F.2d 878, 880 (11th Cir. 1990); <u>White v. U.S. Dep't of Interior</u>, 639 F. Supp. 82, 86 (M.D. Pa. 1986).

[12] The Court notes that Plaintiff filed this action as related to a dismissed action before this Judge, Civil Action No. 10-389, and not as related to the action before Judge Dalzell which was the subject of the Settlement Agreement, Civil Action No. 04-946.

[13] Plaintiff points out that the Settlement Agreement itself provides that "The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Eastern District of Pennsylvania." Complaint, Ex. A, ¶ 25. However, subject matter jurisdiction cannot be conferred by agreement of the parties, so this forum selection clause can be enforced only if the Court has jurisdiction to hear the claims.

Government filed a motion to enforce the Settlement Agreement.  This motion was initially granted without challenge to the court's jurisdiction to decide the motion.  Nichole Medical filed a motion for reconsideration, which raised the jurisdictional issue.  Judge Dalzell's ruling[14] relied upon Sawka v. Healtheast, Inc., in which the Third Circuit held that "unless a settlement is part of the record, incorporated into an order of the district court, or the district court has manifested an intent to retain jurisdiction, it has no power beyond the Rules of Civil Procedure to exercise jurisdiction over a petition to enforce a settlement."[15]  Finding that none of the enumerated exceptions applied, the court found it lacked jurisdiction, vacated its order, and ruled that the Government would need to file a new action to enforce the Settlement Agreement and the court would need to find independent jurisdiction over the new action.

Given that the Settlement Agreement was not part of the record or incorporated into an order of the district court, and in light of a ruling by Judge Dalzell that he had not manifested an intent to retain jurisdiction, the Court finds it does not have inherent power to enforce the settlement agreement.  Therefore, it must look to the Tucker Act and the Little Tucker Act for an independent source of jurisdiction.[16]  Neither act permits this Court to assume jurisdiction over breach of contract claims against the Government seeking more than $10,000.[17]  Therefore, the Court lacks jurisdiction over Count II of Plaintiffs' Complaint.

---

[14] Civil Action No. 04-946, Doc. No. 49.

[15] 989 F.2d 138, 141 (3d Cir. 1993).

[16] Id.

[17] 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

*Jurisdiction Over Count I (Declaratory Judgment) Under the Tucker Act*

In Count I, Plaintiffs seek a finding that the Settlement Agreement is void or unenforceable due to Defendant's breach of the Settlement Agreement. Although it is captioned and framed as a claim for a declaratory judgment, Count I clearly sounds in contract as the relief sought requires a finding that Defendant breached the Settlement Agreement. Plaintiffs argue, however, that the declaratory relief sought in Count I is not available in the Court of Federal Claims, and therefore this Court should retain jurisdiction over the case.

The Court of Appeals for the Federal Circuit has held that when a contract claim meets the requirements for Court of Federal Claims jurisdiction under the Tucker Act, and when that court can fashion an adequate remedy for the plaintiff,[18] the Court of Federal Claims maintains exclusive jurisdiction over the related claims for equitable relief, including, *inter alia*, declaratory judgment.[19] Therefore, the Court finds that the Court of Federal Claims has exclusive jurisdiction over both Counts I and II.

*Jurisdiction over Count III (Fraud) Under the FTCA and Tucker Act*

Finally, the Government argues that Nicole Medical's fraud claim is not actionable under either the FTCA[20] or the Tucker Act's waiver of sovereign immunity.

In Count III, Nicole Medical alleges that the United States implicitly or explicitly warranted that it would conduct business with Nichole Medical within the legal and regulatory structure, that Nichole Medical relied upon this representation, and that the representation was

---

[18] See Fluor Enterprises, Inc. v. United States, 64 Fed. Cl. 461, 493 (Ct. Cl. 2005) (declaring a portion of a contract void).

[19] Brazos Elec. Power Coop., Inc. v. United States, 144 F.3d 784 (Fed. Cir. 1998).

[20] 28 U.S.C. §2680.

false.  Beyond these conclusory statements, Plaintiffs allege no facts in support of the fraud claim.  Therefore, it is not clear from the Complaint whether Plaintiffs are alleging fraud in the inducement of the contract, or simply alleging that the United States failed to fulfill its promise that it would conduct business within the legal and regulatory structure.[21]  Regardless, the Court finds that the fraud claim sounds in contract, not in tort, and therefore that the Tucker Act, and not the FTCA, would govern questions of jurisdiction and sovereign immunity.[22]  As the Government acknowledges in its reply brief, if this is a fraud in the inducement case, the Tucker Act may provide a waiver of sovereign immunity.[23]  However, because Count III sounds in contract, the Court of Claims has exclusive jurisdiction and sovereign immunity should be decided by that court.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims.  Pursuant to 28 U.S.C. § 1631, the case will be transferred to the Court of Federal Claims for further proceedings.

An appropriate Order follows.

---

[21] The latter would be redundant with the claim in Count II.

[22] Kline v. Cisneros, 76 F.3d 1236, 1238 (D.C. Cir. 1996).

[23] Schmidt v. Shah, 696 F. Supp. 2d 44, 60-61 (D.D.C. 2010) ("[T]he Tucker Act's waiver of sovereign immunity also encompasses tort-like claims such as misrepresentation where the plaintiff asserts that pre-contract behavior by the government necessitates an adjustment of contract terms, including damages, reformation, or rescission."); Kline, 76 F.3d at 1238 (finding contract jurisdiction where plaintiff alleged that pre-contractual misrepresentations induced the contract).